UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WESTERN WASHINGTON LABORERS-EMPLOYERS PENSION TRUST, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>    vs.<br><br>PANERA BREAD CO., et al.,<br><br>      Defendants. | Case No. 4:08CV00120 ERW |

### **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion for Summary Judgment [doc. #39].

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Western Washington Laborers-Employers Pension Trust ("Plaintiff") brings this lawsuit on behalf of purchasers of the common stock of Defendant Panera Bread Co. ("Panera") between November 1, 2005 and July 26, 2007, inclusive. Plaintiff asserts claims against Panera and Panera officers Ronald M. Schaich ("Shaich"), Mark E. Hood ("Hood"), and Neal Yanofsky ("Yanofsky") (collectively, "Defendants"), alleging that throughout the class period, Defendants made false and misleading public statements about the current and projected success of Panera's growth strategy and Crispani flatbread pizza product that artificially inflated the value of Panera common stock. In so doing, Plaintiff contends that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act") and Rule 10b-5 promulgated thereunder, and that the individual Defendants are therefore liable as "control persons" under Section 20(a) of the Exchange Act.

In October 2008, Defendants filed a Motion to Dismiss [doc. #29], primarily arguing that the challenged statements were not actionable under the Exchange Act due to a statutory safe harbor for forward-looking statements accompanied by meaningful cautionary language. *See* 15 U.S.C. § 78u-5(c)(1)(A). As a result of the filing of that motion, all discovery in the case was automatically stayed pursuant to a provision of the Private Securities Litigation Reform Act ("PSLRA"). *See* 15 U.S.C. § 78u-4(b)(3)(B) ("In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."). The Court, however, concerned about its ability to take judicial notice of certain documents offered in support of the motion to dismiss, converted it into a motion for summary judgment and denied it due to its failure to comply with Local Rule 7-4.01(E), which sets forth the proper form and contents of a motion for summary judgment. *See Western Washington Laborers-Employers Pension Trust v. Panera Bread Co.*, 2009 WL 1812829 (E.D. Mo. 2009). With leave of the Court, Defendants subsequently re-filed the motion as this Motion for Summary Judgment [doc. #39].

Plaintiff then sought a continuance under Federal Rule of Civil Procedure 56(f), arguing that the Court should not rule on summary judgment without first giving it an opportunity to conduct discovery. Plaintiff argued that the above-mentioned safe harbor does not apply to statements that the speaker knows are false, and as such, it needed to conduct discovery into Defendants' knowledge in order to respond to this Motion. The Court disagreed, finding instead that the plain language of the statute, along with its legislative history and the weight of authority applying it, establish that there is no such state of mind component. Given that the contents of the challenged statements are undisputed, the Court concluded that discovery was therefore not

necessary in order for the Court to apply § 78u-5(c)(1)(A), although it did acknowledge that Plaintiff would be entitled to discovery on the remaining issues raised by the Motion. *See W. Washington Laborers-Employers Pension Trust v. Panera Bread Co.*, 2009 WL 3756619 (E.D. Mo. 2009). As a result, the Court only addresses the safe harbor's applicability in ruling on Defendants' Motion for Summary Judgment.

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden shifts to the non-moving party to set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e)(2). When the burden shifts, the non-moving party may not rest on the allegations

in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden and survive summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

In ruling on a motion for summary judgment, the Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## III. DISCUSSION

Defendants contend that they are entitled to summary judgment because their challenged statements are not actionable under the Exchange Act, pursuant to the PSLRA's safe harbor for forward-looking statements identified as such and accompanied by meaningful cautionary language. Plaintiff claims that the statements at issue are not protected because the cautionary language was inadequate and because the statements were not truly forward-looking.

In order for Plaintiff to succeed in its claims against all Defendants – those brought under § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17

4

C.F.R. § 240.10b-5 – Plaintiff must prove the following elements: "(1) misrepresentations or omissions of material fact or acts that operated as a fraud or deceit in violation of the rule[s]; (2) causation, often analyzed in terms of materiality and reliance; (3) scienter on the part of the defendants; and (4) economic harm caused by the fraudulent activity occurring in connection with the purchase and sale of a security." *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008) (citing *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 888 (8th Cir. 2002)). Plaintiff's claims against the individual Defendants as "control persons" under § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), are premised on underlying violation(s) of § 10(b) or Rule 10b-5; if the former claims fail, then so must the § 20(a) claims. *See In re Medtronic Inc. Sec. Litig.*, 618 F. Supp. 2d 1016, 1038-39 (D. Minn. 2009) (control person liability requires proof of underlying Exchange Act violation) (citing *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d. Cir. 1998).

The elements of these claims notwithstanding, the Exchange Act provides a safe harbor for a forward-looking statement that is "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement," and also for a forward-looking statement that is "immaterial."[1] 15 U.S.C. § 78u-5(c)(1)(A). The applicability of this safe harbor is a question of law that does not require a factfinder's consideration. *See* 15 U.S.C. § 78u-5(e) ("On any motion to dismiss based upon [the safe harbor], the court shall

---

[1] This safe harbor also has a second prong, not at issue in this Motion, that applies where "the plaintiff fails to prove that the forward-looking statement," if it was made by a natural person, "was made with actual knowledge by that person that the statement was false or misleading," or if a business entity made the statement, the plaintiff fails to prove that it was "made by or with the approval of an executive officer of that entity" and "made or approved by such officer with actual knowledge by that officer that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1)(B).

consider any statement cited in the complaint and any cautionary statement accompanying the forward-looking statement, which are not subject to material dispute . . . ."); *see also Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 728 (7th Cir. 2004) ("The PSLRA creates rules that judges must enforce at the outset of the ligation . . . ."); *In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1167 n.9 (C.D. Cal. 2003) (rejecting argument that meaningfulness of cautionary language is a question of fact).

As the Court concluded previously in ruling that Plaintiff was not entitled to discovery on the applicability of § 78u-5( c)(1)(A), this safe harbor applies irrespective of the speaker's state of mind – that is, a forward-looking statement is protected if it is immaterial or identified as forward-looking and accompanied by meaningful cautionary language, regardless of whether the speaker knows the statement is false. *See W. Washington Laborers-Employers Pension Trust v. Panera Bread Co.*, 2009 WL 3756619, at *2-*3 (E.D. Mo. 2009). The Court rested that conclusion on three principal bases, the first being the plain language of the safe harbor, which has an explicit scienter component in § 78u-5(c)(1)(B) – a provision not at issue in this case – but makes no mention of such a requirement in § 78u-5(c)(1)(A). Second, the Court looked to the decisions of other courts, and found that the majority of them – principally courts of appeals – have read the statute in this manner. *See, e.g.*, *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 672 (6th Cir. 2003); *Harris v. Ivax Corp.*, 182 F.3d 799, 803-04 (11th Cir. 1999); *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 212 (1st Cir. 2005); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 371 (5th Cir. 2004); *Yellen v. Hake*, 437 F. Supp. 2d 941, 961-62 (S.D. Iowa 2006).[2] Last, the Court considered the legislative history of the statute, which explicitly refers to

---

[2] *But see In re Nash Finch Co.*, 502 F. Supp. 2d 861, 873 (D. Minn. 2007); *In re SeeBeyond Techs. Sec. Litig.*, 266 F. Supp. 2d 1150, 1165 (C.D. Cal. 2003).

6

the absence of a state of mind requirement in § 78u-5(c)(1)(A). H.R. Rep. No. 104-369, at 47 (1995) (Conf. Rep.), *as reprinted in* 1995 U.S.C.C.A.N. 730, 743 ("The applicability of the safe harbor provisions under subsection[] (c)(1)(A)(i) . . . shall be based upon the sufficiency of the cautionary language under those provisions and does not depend on the state of mind of the defendant.").

It is undisputed that all of the statements at issue were identified as forward-looking and accompanied by cautionary language; thus, the operative questions are (1) whether that cautionary language was meaningful in light of the risks that ultimately materialized; and (2) whether the challenged statements were in fact forward-looking.

### A.     *Adequacy of Cautionary Statements*

The safe harbor requires courts to assess whether cautionary language accompanying a forward-looking statement is sufficiently meaningful. *See* § 78u-5(c)(1)(A)(ii) (safe harbor requires "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement"). In the case of oral forward-looking statements, the statute expressly provides that the speaker is permitted to identify an available written document containing the cautionary statements – that is, the cautionary language need not be a part of the forward-looking statement so long as the statement specifies where it can be located. *See* 15 U.S.C. § 78u-5(c)(2)(B). Furthermore, although the statute is not explicit regarding this type of incorporation by reference for written forward-looking statements, courts considering the issue seem to uniformly conclude that it is permissible. *See Yellen*, 437 F. Supp. 2d at 963-64 (collecting cases).

Although courts have articulated the standard underlying the meaningfulness requirement differently, it requires more than mere boilerplate but less than disclosure of every potential risk. *See, e.g.*, *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 729 (7th Cir. 2004) (applying § 78u-5(c)(1)(A) and identically-worded § 77z-2(c)(1)(A) safe harbors, and concluding that the cautionary language requirement cannot require disclosure of all potential risks); *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 372 (5th Cir. 2004) ("The requirement for 'meaningful' cautions calls for 'substantive' company-specific warnings based on a realistic description of the risks applicable to the particular circumstances, not merely a boilerplate litany of generally applicable risk factors."); *Harris v. Ivax Corp.*, 182 F.3d 799, 807 (11th Cir. 1999) (to be meaningful, cautionary statements must warn of "risks of a significance similar to that actually realized"). Another court has suggested that to determine whether cautionary language is adequate, courts should evaluate it in light of the allegedly undisclosed risk and determine if a reasonable investor would have concluded that the risk that eventually materialized never existed. *See In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 380 (S.D.N.Y. 2007) (citing *Halperin v. eBanker USA.com*, 295 F.3d 352, 359 (2d Cir. 2002) (applying analogous "bespeaks caution" doctrine)).

Plaintiff's theory in this case is that Panera stock was trading at an artificially high level because Defendants failed to disclose (1) that its growth strategy would cause Panera to be over-concentrated in a significant number of markets in which it was operating, ultimately causing new and existing stores to experience "severe sales cannibalization"; and (2) that they had reason to believe, prior to its introduction, that Crispani would not be successful.[3] With respect to those

---

[3] To the extent Plaintiff argues that at later points, the cautions ignored that the growth strategy and Crispani were already failing, Plaintiff is arguing that Defendants misrepresented current or historical facts – an issue the Court addresses below.

8

and other risks, Panera's cautionary statements in its press releases vary slightly across the class period, but the following is representative:

> The Company's actual results could differ materially from those set forth in the forward-looking statements due to known and unknown risks and uncertainties and could be negatively impacted by a number of factors.  These factors include but are not limited to the following: inability to execute our growth strategy, including variations in the number, timing, and successful nature of Company and franchise bakery-cafe openings and continued successful operation of bakery-cafes; failure to comply with government regulations; loss of a member of senior management; failure or inability to protect our brand, trademarks, or other proprietary rights; competition; rising insurance costs; disruption in our supply chain or increases in ingredient, product, or other supply costs; disruptions or supply issues in our fresh dough facilities; health concerns about the consumption of certain products; complaints and litigation; risks associated with the acquisition of franchise-operated bakery-cafes; other factors, some of which may be beyond our control, effecting [sic] our operating results; and other factors that may affect restaurant owners or retailers in general.  These and other risks are discussed from time to time in the Company's SEC reports, including its Form 10-K . . . and its quarterly reports on Form 10-Q.

Initially, the Court notes that these cautions are much more substantive and firm-specific than those that courts have rejected as mere boilerplate. *See, e.g.*, *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 694 (5th Cir. 2005) ("These forward-looking statements involve numerous risks, uncertainties and assumptions, and actual results could differ materially from anticipated results."); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 245 (5th Cir. 2009) (statements are "not guarantees of future performance . . . and involve known and unknown risks and other factors that could cause actual results to be materially different from any future results expressed or implied by them.").  While certain of the stated risks would, of course, apply to other businesses, when read as a whole these cautionary statements do address specific, principal risks associated with Panera's business; they are more than "merely a boilerplate litany of generally applicable risk factors." *Southland Sec. Corp.*, 365 F.3d at 372.

With respect to Panera's growth strategy, the cautions in its press releases address the specific risk of which Plaintiff complains: its "inability to execute our growth strategy, including variations in the number, timing, and successful nature of Company and franchise bakery-cafe openings and continued successful operation of bakery-cafes." The cautions in its SEC filings then go into considerably more detail as to the nature of the strategy and the risks associated with it:

> Our growth strategy also includes opening bakery-cafes in existing markets to increase the penetration rate of our bakery-cafes in those markets. However, this strategy could result in a sales decline in some of our existing bakery-cafes if customers choose to patronize a new location over an existing location. There can be no assurance that we will be successful in operating bakery-cafes profitably in new markets or further penetrating existing markets.

These explicit warnings, coupled with an explanation of the specific strategy at issue, were more than sufficient to put investors on notice as to Panera's strategy for opening new stores and the reasons why it might not be successful. *See In re Gander Mountain Co. Sec. Litig.*, 2006 WL 140670, at *6, *12 (D. Minn. 2006) (growth strategy caution including statement that "[o]ur expansion strategy includes further penetration of our existing markets, which could cause sales at our existing stores to decline" was meaningful).

Turning to Crispani, Panera's SEC filings specifically referred to, in varying terms, risks of "changes in average weekly sales and comparable bakery-cafe sales, including as a result of the introduction of new menu items," of "convinc[ing] customers that food made with higher-quality ingredients . . . is worth the prices they will pay at our bakery-cafes relate to prices offered by some of our competitors," of "consumer reaction to pricing or menu ingredient changes," and the like. Assuming for the sake of argument that a bakery-cafe franchisor would even need to warn of the obvious risk associated with introducing new menu items, these cautions were sufficient to notify investors of that risk. Contrary to Plaintiff's argument, the Court does not believe that the

10

safe harbor requires Defendants to refer by name to a new product in order to meaningfully warn that it might not be successful; it is adequate for these purposes to warn that introducing new products comes with the risk that consumers will not react favorably to them.

The presence of these cautions, referring in general terms to the specific risks that ultimately materialized, means that these statements are not, as Plaintiff suggests, disclaimers "that could be appended to any press release" or public filing. *See Sawant v. Ramsey*, 570 F. Supp. 2d 336, 342-43 (D. Conn. 2008). Requiring more would, in effect, transform the cautionary statement requirement into a requirement that every forward-looking statement be accompanied by a lengthy, detailed analysis of all of the company's plans or strategies and every potential risk associated with them – something that courts have been clear that the safe harbor does not require. *See Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 729 (7th Cir. 2004); *see also Harris v. Ivax Corp.*, 182 F.3d 799, 807 (11th Cir. 1999) (cautions not mentioning the specific risk that resulted are still meaningful for safe harbor purposes if they address risks of similar significance).

The Court therefore concludes that the cautionary statements accompanying Defendants' allegedly false or misleading representations are meaningful as a matter of law. The cautions went beyond mere boilerplate and warned of specific risks associated with the bakery-cafe franchise business, and indeed mentioned the specific risks that Plaintiff claims ultimately materialized.

### B.     *Forward-Looking Statements*

Having concluded that the cautionary language accompanying all of the challenged statements was meaningful, the Court now turns to the alleged misrepresentations themselves to determine whether they are in fact forward-looking and therefore protected by the § 78u-

11

5(c)(1)(A) safe harbor.[4]  § 78u-5(i)(1) provides six exclusive categories of "forward-looking statements":

> (A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;
> (B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;
> (C) a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;
> (D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C).
> (E) any report issued by an outside reviewer retained by an issuer, to the extent that the report assesses a forward-looking statement made by the issuer; or
> (F) a statement containing a projection or estimate of such other items as may be specified by rule or regulation of the Commission.

Courts applying this safe harbor have made clear that it only protects purely forward-looking statements – i.e., not those that also contain representations as to present or historical facts. *See, e.g.*, *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 705 (7th Cir. 2008) ("[A] mixed present/future statement is not entitled to the safe harbor with respect to the part of the statement that refers to the present."); *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 213 ("The safe harbor . . . is intended to apply only to allegations of falsehood as to the forward-looking

---

[4] Plaintiff has not made it particularly clear which of Defendants' statements it finds objectionable, in that Plaintiff's 88-page Amended Class Action Complaint [doc. #22] alternately cites to large blocks of quoted text and snippets of text taken from longer statements, apparently in an attempt to construct a narrative demonstrating that Defendants' statements paint a false or misleading picture of Panera's prospects at the time the statements were made. Plaintiff's extensive use of block quotations, however, makes it difficult to ascertain precisely which statements it is challenging. Defendants correctly note, moreover, that in more than one instance Plaintiff's citations have removed the statement from the context in which it was made. The Court therefore endeavors to present what it understands to be the objectionable statements in their proper context – i.e., not exactly as Plaintiff has presented them in its Complaint. To the extent that there are quoted statements in the Complaint that neither party has addressed in the briefing of this Motion, the Court assumes that Plaintiff does not challenge those statements.

12

aspects of the statement."). In determining whether a statement is truly forward-looking, the determinative factor is not the tense of the statement; instead, the key is whether its "truth or falsity is discernible only after it is made." *Harris*, 182 F.3d at 805.

At the outset, the Court notes that Plaintiffs have challenged as fraudulent most, if not all, of Defendants' quarterly earnings per share and comparable sales growth projections throughout the class period, on the grounds that Defendants knew they could not meet the projections because they were aware that their growth strategy and Crispani were failing. These sorts of projections are quintessential forward-looking statements. *See* § 78u-5(i)(1)(A) ("a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items"). Given the Court's conclusion that the § 78u-5(c)(1)(A) safe harbor does not contain a state of mind component, *see W. Washington Laborers-Employers Pension Trust v. Panera Bread Co.*, 2009 WL 3756619, at *2-*3 (E.D. Mo. 2009), these statements are necessarily protected due to the presence of accompanying meaningful cautionary language, discussed above. The Court therefore declines to consider these statements on an individual basis; it suffices to say that they all fall within the safe harbor.

### 1. Statements about Crispani

Plaintiff first challenges as not forward-looking certain statements about Crispani by Defendant Schaich at Panera's Analyst Day on May 5, 2006:

> The truth is we're getting 3 to 4% on Crispani, right? We assume about half of that is incremental, but with every piece of that comes an equal amount of soup, salad and sandwich. So the net result is 3 to 4% of sales, 3 to 4% of lift.

The problem with Plaintiff's argument is that its quotation takes the statement entirely out of context, omitting the sentences that immediately follow it:

13

> Now that's what we're imagining today, but again I hesitate to tell you what to expect. I mean you should expect we're going to roll it out. You should expect that[] it's built into our guidance. And you should expect it's built into our 4.5 to 6.5 comps guidance.

As Defendants correctly argue, when read in context it is clear that this statement is forward-looking under the terms of the safe harbor, as an assumption underlying Defendants' projections about Panera's performance going forward. *See* § 78u-5(i)(1)(D). As such, it is protected by the safe harbor.

Plaintiff next challenges statements from Panera's July 25, 2006 Second Quarter Press Release: "[T]he gradual introduction of Crispani is progressing more rapidly than planned, bringing certain startup expenses, such as training and initial marketing costs, forward from the fourth quarter to the third quarter," and from Defendant Schaich's July 26, 2006 Second Quarter Earnings Conference Call: "And so, I think that from every perspective at the highest level, our Crispani program is going exactly as our research, and our seven or eight different tests that we ran would have indicated." Regardless of the tense of these statements, this type of statement concerning ongoing progress is forward-looking because it does not make any specific, verifiable representation about the present state of affairs. *See Inst. Investors Group v. Avaya, Inc.*, 564 F.3d 242, 255 (3d Cir. 2009) ("These statements do not justify the financial projections in terms of any particular aspect of the company's current situation; they say only that, whatever that situation is, it makes the future projection attainable. Such an assertion is necessarily implicit in every future projection."); *In re Federal-Mogul Corp. Sec. Litig.*, 166 F. Supp. 2d 559, 565 (E.D. Mich. 2001) ("[C]laims to the effect that 'the consolidation . . . continues as planned' or that

14

'management is proceeding with their . . . integration,' while in the present tense, are inherently forward-looking."). The safe harbor therefore likewise covers these statements.[5]

That said, Plaintiff does identify some Crispani-related statements that are assertions about present facts. First, there is Defendant Schaich's statement from the October 25, 2006 Third Quarter Earnings Conference Call:

> Our initial read is that Crispani is giving us the 2 to 4% comp lift per café that we expected. This is the equivalent of $800 to $2,000 a week in sales. Now let me add, it's too early to tell how Crispani [will] ultimately land, but we are very pleased with where we stand at this point. This 2 to 4% life occurred with marketing support, and only after the marketing support took hold, but of course, occurred only in the 75% of the cafes that now have Crispani.

Additionally, there are present-fact statements in the February 9, 2007 Fourth Quarter Earnings Conference Call: "We are seeing the 2% lift in our overall business that we expected Crispani would deliver through our evening-day part," and in the April 25, 2007 First Quarter Earnings Conference Call: "Crispani is for us essentially breaking even or barely breaking even, somewhere around there." Defendants claim that these statements were made in conjunction with discussions of future projections, and that they are therefore forward-looking as assumptions underlying those projections. *See* § 78u-5(i)(D). An assumption underlying a projection, however, is only forward-looking to the extent it assumes that a given set of facts will continue to exist in the future. These statements also contain representations as to present facts, the veracity of which could be ascertained at the time they were made, and accordingly they are not forward-looking as to those facts. *See Harris*, 182 F.3d at 805. Furthermore, the Court does not find it relevant – at

---

[5] Furthermore, as Defendants note, management-speak about how a product is performing relative to expectations is, as a general matter, inactionable puffery under the Exchange Act. *See Johnson v. Tellabs, Inc.*, 262 F. Supp. 2d 937, 951 (N.D. Ill. 2003) (statements such as "demand for that product is exceeding our expectations" and "[w]e feel very, very good about the robust growth we're experiencing" are "nothing more than puffery and cannot be the basis of a cause of action").

least in terms of the applicability of the safe harbor – that certain of these statements expressed caution about Crispani or toned down earlier, more positive expectations about its performance; it suffices to say that they contain representations as to present facts, and that they therefore are not protected by the safe harbor.

### 2. Statements about Panera's Growth Strategy

Plaintiff alleges that Defendant Shaich misrepresented facts about Panera's ability to open new stores without depreciating unit volumes in the following statement from Panera's April 26, 2006 First Quarter Earnings Conference Call:

> And I also believe, and you guys can tell me different, tell me anybody who is opening 150 stores a year or significant numbers that don't see their average unit volumes going down. At least in terms of current – the opening year volumes. And ours continue to stay stable, essentially. So the bottom line is characterize it as you will, we feel pretty good about it.

Plaintiff ignores, however, that the statement was made to support Schaich's assertion that he felt Panera would be able to meet its targeted earnings per share projections, and read in that context, the "continue to stay stable" language is forward-looking in the sense that it is an expectation or assumption related to those projections. Although standing alone the statement might appear to also contain a present representation, the context demonstrates that the entire discussion concerned future events. It is therefore protected by the safe harbor.

Plaintiff also challenges a number of growth-related statements that, like many of the statements about Crispani, are either too vague or indefinite to qualify as concrete, verifiable representations, or are inactionable puffery about performance relative to expectations:

> . . . our very robust start to this year . . We have become a significant company in the last few years, and yet we believe the best is still in front of us. At no time have we felt more confident about delivering on our future, and at no time have we felt more ready to create that future. February 10, 2006 Fourth Quarter Earnings Conference Call.

16

> This increased comp range comes from our greater visibility on certain initiatives that we anticipate will have a sales impact in the last quarter of the year. . . . As you can see, 2006 is shaping up to be another powerful year for Panera. April 26, 2006 First Quarter Earnings Conference Call.
>
> The Company is particularly pleased with the solid pace of new bakery-café development in 2006 after an extremely strong second quarter. July 26, 2006 Second Quarter Press Release.
>
> Yes, we are disappointed to now be targeting at the lower end of our upwardly revised range. But taken as a whole, 2006 is shaping up to be a very, very strong year for us. October 25, 2006 Third Quarter Earnings Conference Call.
>
> 2006 is shaping up to be another strong year, with full year earnings growth at 26% to 27%. Although we are disappointed that 2006 results are expected to be at the low end of the revised target we set in July, we are pleased to be on track to both achieve our initial targets set at this time last year and exceed our long-term EPS growth target of 25%. October 25, 2006 Third Quarter Press Release.

None of these statements contains any specific, concrete factual representations as to present facts; the Court therefore concludes that all are forward-looking and protected by the safe harbor.

Plaintiff similarly contends that the following statement in the February 9, 2007 Earnings Conference Call was a false or misleading statement of fact:

> So, there's certainly individual cases where we elect that there's a great market area for us and we elect to put a café a mile down the road from another café and it may affect that individual one for a short period of time, but we have yet to discover a single market where we're experiencing systemic cannibalization in that market that affects our comps. . . . I would add to that . . . that cannibalization does happen. It happens for the first twelve months of a new store, affecting an existing store. But that's been essentially built into these comps over years now. Three, four, five years.

Plaintiff appears to contend that Defendants *were* aware of markets in which "systemic cannibalization" was affecting comparable sales growth, but this is not subject to verification because there is no way of drawing a distinction between "cannibalization" – which Defendants expressly admit takes place – and "*systemic* cannibalization." This statement is simply too vague to constitute a factual representation, and accordingly it is not actionable.

17

Plaintiff does identify as false or misleading two tangentially growth-related statements that are not forward-looking. Panera represented in its 2005 and 2006 Form 10-Ks that the average cost of opening a Company-owned bakery cafe in those years, after landlord allowances, was $920,000. These are straightforward factual representations, and if Plaintiff believes that it can demonstrate their falsity, and that it can satisfy the other requisites of asserting Exchange Act claims with respect to these statements (such as proving loss causation), the safe harbor will not prevent it from doing so.

## IV.   CONCLUSION

Defendants' Motion for Summary Judgment will be granted in part and denied in part. The PSLRA, 15 U.S.C. § 78u-5(c)(1)(A), provides that forward-looking statements identified as such and accompanied by meaningful cautionary language are not actionable under the Exchange Act, and Defendants have demonstrated that their financial projections and the vast majority of their related statements at issue fall within this safe harbor provision. Plaintiff, however, does challenge as false or misleading several statements that are not forward-looking, and accordingly these statements are not protected by the safe harbor – the applicability of which is the only issue currently before the Court on Defendants' Motion. Specifically, those statements are (1) from the October 25, 2006 Third Quarter Earnings Conference Call: "Our initial read is that Crispani is giving us the 2 to 4% comp lift per café that we expected."; (2) from the February 9, 2007 Fourth Quarter Earnings Conference Call: "We are seeing the 2% lift in our overall business that we expected Crispani would deliver through our evening-day part."; (3) from the April 25, 2007 First Quarter Earnings Conference Call: "Crispani is for us essentially breaking even or barely breaking even, somewhere around there."; and (4) Panera's representations in its 2005 and 2006 Form 10-Ks that the average cost opening a new company-owned store, after landlord concessions, was

18

$920,000 in those years.  The Court expresses no opinion as to whether Plaintiff will be able to prove the elements of its Exchange Act claims with respect to these statements; it concludes only that they are representations of present or historical facts and therefore not protected by the safe harbor.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [doc. #39] is **GRANTED, in part** and **DENIED, in part**.  Defendants' Motion is denied with respect to the statements of present fact set forth in the preceding paragraph, and otherwise granted.

Dated this 16th Day of March, 2010.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE